UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CASSANDRA CLEAVELAND, Individually, and as Mother and Next Friend of A.C., a Minor, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. ) |
| CITY OF ROCK ISLAND, ILLINOIS | ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff Cassandra Cleaveland, Individually, and as Mother and Next Friend of A.C., a Minor, by and through her attorneys, Katz Nowinski P.C., for her Complaint against the defendant, City of Rock Island, Illinois, states as follows:

## NATURE OF THE ACTION

1. This is an action on behalf of A.C., a minor, who has hypochondroplasia, filed by and through his mother and next friend, Cassandra Cleaveland, for damages and injunctive relief against defendant City of Rock Island, for alleged violations of Title II of the Americans with Disabilities Act and section 504 of the Rehabilitation Act, for defendant's failure to accommodate A.C. by refusing to make exceptions to its newly enacted (2018) Parks & Recreation Department policy allowing only certain coast guard approved flotation devices at its municipal pool called "Whitewater Junction", by failing to accommodate A.C. by allowing the use of an alternative flotation device such as a Coast Guard ring, which failure to accommodate had the effect of preventing A.C. from using the pool as a result of his hypochondroplasia.

1

## PARTIES

2. Cassandra Cleaveland (hereinafter referred to as "Cassandra" or "plaintiff") is a resident of Sherrard, Mercer County, Illinois.

3. Cassandra is the mother of A.C., a Minor.

4. Defendant City of Rock Island, Illinois, is a municipal corporation with its principal place of business in Rock Island, Rock Island County, Illinois, which, through Rock Island Parks & Recreation Department, operates a swimming pool referred to as the Whitewater Junction Aquatic Center, located at 17th Street & 18th Avenue, Rock Island, Rock Island County, Illinois and which swimming pool is owned by the City of Rock Island.

## JURISDICTION AND VENUE

5. This court has subject matter jurisdiction over this cause of action pursuant to Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131, *et seq.*, pursuant to Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, *et seq.*, and pursuant to 28 U.S.C. § 1331.

6. This cause of action arose in Rock Island County, Illinois, therefore venue in this court is proper under 28 U.S.C. § 1391(b).

7. Pursuant Local Rule 40.1(F), the basis for filing in the Rock Island Division is that plaintiff resides in Mercer County, Illinois, and all relevant incidents from which this cause of action arose occurred in Rock Island County, Illinois.

## FACTUAL BACKGROUND

8. For many years, plaintiff has been a patron of the Whitewater Junction Aquatic Center ("Whitewater Junction"), going with her own mother since 2003, and having her own membership since 2009.

9.  A.C. has been going to and enjoying the use of the pool since 10 days after he was born in June, 2013.

10.  A.C. was first required, and did have, his own membership in 2017.

11.  At least five other members of A.C.'s family (his father, aunt, two cousins, and grandmother) have season passes to Whitewater Junction.

12.  At least three families from A.C.'s class at school have memberships.

13. At least five families with children who have been on A.C.'s soccer or t-ball teams have memberships.

14. A.C. had private swim lessons at Whitewater Junction in the summer of 2016.

15. A.C. had numerous sessions of swim lessons at Whitewater Junction 2017.

16. At no time prior to 2018 had there ever been any policy in effect which excluded A.C. from using the pool with personal flotation devices, thus there had not been a need for accommodation to the policies at Whitewater Junction..

17. When the Whitewater Junction Aquatic Center opened for the season on or about May 26, 2018, it instituted a new policy stating "only U.S. Coast Guard approved personal flotation device allowed," and A.C. was prohibited from using the personal flotation devices he had used in the prior years.

18.  A.C. is not (and in 2018 was not) able to use <u>certain</u> U.S. Coast Guard approved flotation devices (that Whitewater Junction later explained it meant by its policy change, particularly a life vest), because his hypochondroplasia results in shortened torso and neck and any life vest covers above his neck area and his face, thereby restricting his ability to move, turn, and see, creating a greater danger to him than an alternative flotation device such as a Coast Guard ring. Also, A.C.'s medical condition makes him top heavy, such that the approved coast

3

guard flotation devices required by Whitewater Junction policies could flip him face-down in the water with no strength or ability to turn over under his own power.

19.  As of June 2018, the Whitewater Junction Aquatic Center was not only the pool he and his family and friends had enjoyed for virtually all of A.C.'s life, it was also the closest pool to plaintiff's residence offering zero depth and other amenities plaintiff needed given A.C.'s then age (just turned 5 years of age) as well as his hypochondroplasia.

20. However, the City, by the Whitewater Junction Aquatic Center, refused to allow A.C. in the pool with any personal flotation devices, including a flotation or swim "ring."

21.  In June, 2018, Cassandra contacted and met with various City officials, including but not limited to the Assistant Director of Parks and Recreation, her Alderman, the City Manager, and the Pool Manager, made them all aware of her son's disability and the discriminatory effect this new policy had on her son, in an attempt to find a solution or accommodation to allow A.C. the full and equal enjoyment of the pool.

22.  Plaintiff provided to the City the letter (redacted) attached hereto as Exhibit 1 dated June 7, 2018, from Janet M. Legare, MD, Director, Midwest Regional Bone Dysplasia Clinic through the University of Wisconsin.

23. As Dr. Legare states in that letter: "This letter is regarding the need for swimming adaptations for [A.C.] … Because of his disability, it is necessary for him to use a round flotation device … that his legs go through because a typical USGC approved life jacket is not appropriate."

24. Plaintiff provided to the City a second letter from Dr. Legare (redacted) dated June 18, 2018, attached hereto as Exhibit 2.

25. As explained by Dr. Legare in Exhibit 2: "I care for [A.C.] in the Midwest Regional Bone Dysplasia Clinic through the University of Wisconsin.  [A.C.] has a diagnosis of hypochondroplasia which results in … some processing delays.  He is able to do many of the things similar aged children do, but he is short and can have some delays in his movements.  He is fully able to swim and play in a pool, but requires some type of device to provide stability if he were to fall or get knocked down by his peers bigger than he is.  The LEAST RESTRICTIVE device and environment is always recommended for children with any type of special need.  Mr. Tweet sent me links to multiple devices that are approved by the coast guard.  These are overly restrictive and will not encourage motor development or core strength for [A.C.]  In addition, they draw attention to [A.C.'s] differences which is inappropriate.  … He should not be discriminated against based on his height.  I would support a coast guard ring if an approved device is required."

26. As a large portion of the brief season for the pool was already over, and the City had not responded to plaintiff by allowing an accommodation or modification of its policy to allow A.C. the full and equal enjoyment of the pool, on June 21, 2018, plaintiff filed a Complaint with the Rock Island Human Rights Commission, and then on June 22, 2018, at the recommendation of the Rock Island Human Rights Commission, filed a Complaint with the Illinois Attorney General's Disability Rights Bureau, as well as a Complaint for violation of the ADA with the U.S. Department of Justice, Civil Rights Division.

27. Although the Attorney General's Disability Rights Bureau opened an investigation, on July 13, 2018, the Department of Justice sent correspondence to plaintiff stating that it had decided not to take further action on plaintiff's Complaint.

28. Thereafter, at City Council meetings on July 23, 2018 and August 27, 2018, the City refused to communicate with plaintiff and therefore A.C. was not allowed full and equal enjoyment of the pool for the remainder of the 2018 pool season which ended around Labor Day.

29. On October 22, 2018, plaintiff, by her attorney, attempted once again to resolve this matter with the City, stating, in part, in a letter dated October 22, 2018:

> My position is that while the ADA does require uniformity in physical design to allow for certain types of physical access, it also requires individualized analysis of specific accommodation requests, depending upon the specific needs of an individual seeking public access.
>
> Finally, I am quite familiar with the stellar reputation of the University of Wisconsin genetics program and thus give significant credibility to the opinions of Professor Legare, who has written at least two opinions with regard to this matter. I am curious as to whether the Rock Island Park Board and/or Parks Department employees have sought the assistance of anyone with specialized knowledge and/or training on the genetics at issue herein and the safety aspects at issue.

30. On March 18, 2019, plaintiff's counsel sent additional correspondence to the City Attorney proposing the following:

> "My client is willing to abide by the accommodations that Disney Resort was using, which we believe to be entirely reasonable at Whitewater Junction. This would be as an accommodation/exception to the Whitewater Junction standard policy that does not allow personal flotation devices. The reasonable accommodation is as follows:
>
>   1. The Coast Guard ring would be allowed for use as long as it is of reasonable size and used as a flotation device because [A.C.] would not be able to swim without it.
>
>   2. Kaycee Cleaveland or another reasonable <u>adult</u> would be within arm's reach of the child at all times when a ring is used."

31. As "reiterated" in that letter: "Again, I must reiterate that it appears prior responses from the City of Rock Island have related to whether or not …. are going to change their policies.  <u>We are not seeking a change of Whitewater Junction's policies</u>.  Instead, we are

6

requesting an exception or accommodation from those generalized policies specific to [A.C's] condition, formally known as hypochondroplasia." (Emphasis in original.)

32. Despite these efforts, the City has persisted in its refusal to modify or make an exception to allow A.C. to use a coast guard ring to allow him to use the pool.

### COUNT I –INJUNCITVE RELIEF PURSUANT TO TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12131, *Et. Seq.*.

1-32. Plaintiff repeats and realleges paragraph 1-32 as though fully set forth as paragraphs 1-32 of Count I.

33. Pursuant to 42 U.S.C. § 12132: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

34. A.C. is an individual with a disability as defined in the ADA, in that he has hypochondroplasia, which affects his major life activities of performing manual tasks, walking, swimming and learning.

35. Defendant is a "public entity" as that term is defined in Title II of the ADA, 42 U.S.C. § 12131.

36. Defendant denied A.C. full and equal enjoyment of the goods, services, facilities or privileges offered by defendant at the Whitewater Junction Aquatic Center on the basis of his disability in violation of Title II the Americans with Disabilities Act of 1990, § 301 *et seq.*, 42 U.S.C.A. § 12131 *et seq.* as set forth herein.

37. Defendant had violated and continues to violate 42 U.S.C. § 12132, in that it has discriminated against A.C. on the basis of his disability in the full and equal enjoyment of the pool.

38. Specifically, defendant has discriminated against A.C. by the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying the pool and aquatic center.

39. Further, defendant has discriminated against A.C. by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such full and equal enjoyment of the pool by failing to modify or make exceptions to its policy of not allowing A.C. to use a coast guard ring.

40. Additionally, defendant has discriminated against A.C. by failing to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals.

41. Plaintiff, as Mother and Next Friend of A.C., seeks prospective injunctive relief pursuant to Title II of the ADA.

42. A.C. will suffer disability discrimination by defendant in the future, most particularly and immediately being disallowed use of the Aquatic Center for the 2019 season which begins in May 2019.

43. Plaintiff has investigated other local pools, and Whitewater Junction Aquatic Center is the closest pool to plaintiff's residence offering zero depth and other amenities needed by A.C.

44. The distance between plaintiff's residence in Sherrard, Illinois and the Whitewater Junction Aquatic Center located at 17th St & 18th Ave, Rock Island, IL 61201 is 18.2 miles via the fastest route on Knoxville Road, and 19.4 miles via U.S. 67 and Knoxville Road.

45. As mentioned in Dr. Legare's June 18, 2018 letter, a pool provides A.C. with needed opportunities to encourage motor development or core strength, and plaintiff has patronized defendant's pool in the past and has or would have definite plans to return to the pool in the future.

46. A.C. has a specific intent to return to the site of the pool absent the continuing disability discrimination on the part of the City, which will continue unless remedial measures are taken.

47. Based on its numerous and repeated objections to and rejections of plaintiff's requests for accommodations and/or modifications to or exceptions to its policies, there is a realistic, credible, existing, and continuing threat of discrimination from the defendant's noncompliance with the ADA.

48. A.C. will suffer irreparable injury if an injunction is not granted in that he is being deprived of one of his best sources for needed development of motor skills and core strength, as well as opportunities to enjoy the full and equal use of the pool with his peers and his family.

49. Other remedies available at law, such as monetary damages, are inadequate to compensate for that continuing and future injury.

50. Considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted.

51. The public interest would not be disserved by a permanent injunction.

52. Plaintiff is also entitled to recover her costs, including reasonable attorneys' fees and expert witness fees pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794a-3.

WHEREFORE, plaintiff Cassandra Cleaveland, Individually, and as Mother and Next Friend of A.C., a Minor, hereby requests this court grant the following relief:

a. Declare that defendant's actions and inactions violate the ADA;

b. Enjoin defendant from enforcing its "only U.S. Coast Guard approved personal flotation device allowed" policy without modification or exception as to A.C., specifically enjoining the City of Rock Island from disallowing A.C.'s use of the pool with a coast guard ring;

c. Granting a permanent injunction allowing A.C.'s use of the pool with a coast guard ring; and

d. Granting plaintiff her costs, including reasonable attorneys' fees and expert witness fees.

### COUNT II –ACTION FOR DAMAGES UNDER TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12131, *Et. Seq.*.

1-40. Plaintiff repeats and re-alleges paragraph 1-40 of Count I as though fully set forth as paragraphs 1-40 of Count II.

41. A.C. is a qualified person with a disability as defined in 42 U.S.C. § 12131(2).

42. Defendant has denied A.C. the benefits of its services, programs, and activities of Whitewater Junction by reason of his disability.

44. Defendant acted willfully and with deliberate indifference when it discriminated against A.C. by intentionally refusing to allow him to use the pool at Whitewater Junction, and

by intentionally refusing to accommodate him or to modify or make exceptions to its policies in violation of 42 U.S.C. § 12132.

45.  As a result of this discrimination, A.C. has suffered emotional distress and financial damages.

46.  Plaintiff is also entitled to recover her costs, including reasonable attorneys' fees and expert witness fees pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794a-3.

WHEREFORE, plaintiff Cassandra Cleaveland, Individually, and as Mother and Next Friend of A.C., a Minor, hereby requests this court award plaintiff damages in an amount that will fully and fairly compensate plaintiff for the damages that A.C. has sustained, as well as costs, including reasonable attorneys' fees and expert witness fees, pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794a-3, in addition to such other and further relief as this Court deems appropriate.

### COUNT III –ACTION FOR DAMAGES UNDER SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794

1-40.  Plaintiff repeats and realleges paragraph 1-40 of Count II as though fully set forth as paragraphs 1-40 of Count III.

41.  A.C. is a qualified person with a disability as defined in 29 U.S.C. § 701.

42.  A.C. is otherwise qualified to participate in the programs and services of Whitewater Junction.

43.  Defendant was aware of plaintiff's disability and need for accommodation at all times pertinent to this action.

44. Defendant has denied A.C. the benefits of its services, programs, and activities of Whitewater Junction by reason of his disability.

45. Defendant City of Rock Island is a recipient of federal financial assistance subject to Section 504 of the Rehabilitation Act of 1974, 29 U.S.C. § 794.

46. Defendant acted willfully and with deliberate indifference when it discriminated against A.C. by intentionally refusing to allow him to use the pool at Whitewater Junction, and by intentionally refusing to accommodate him or modify or make exceptions to its policies in violation of 29 U.S.C. § 794.

47. As a result of this discrimination, A.C. has suffered emotional distress and financial damages.

48. Plaintiff is also entitled to recover her costs, including reasonable attorneys' fees and expert witness fees pursuant to 29 U.S.C. § 794a-3.

WHEREFORE, plaintiff Cassandra Cleaveland, Individually, and as Mother and Next Friend of A.C., a Minor, hereby requests this court award plaintiff damages in an amount that will fully and fairly compensate plaintiff for the damages that A.C. has sustained, as well as costs, including reasonable attorneys' fees and expert witness fees, pursuant to 29 U.S.C. § 794a-3, in addition to such other and further relief as this Court deems appropriate.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL TRIABLE ISSUES**

> CASSANDRA CLEAVELAND,
> Individually, and as Mother and Next
> Friend of A.C., a Minor, Plaintiff
>
> By: /s/ John F. Doak
>     John F. Doak (ARDC # 6204122)

For:
KATZ NOWINSKI P.C.
Attorneys for Plaintiff
1000 - 36th Avenue
Moline, IL 61265-7126
Telephone:  309-797-3000
Fax:  309-797-3330
E-mail: jdoak@katzlawfirm.com